# EXHIBIT A

| | |
|---|---|
| DISTRICT COURT, MESA COUNTY, COLORADO<br>125 North Spruce Street, Grand Junction, Colorado 81505-7341 (970) 257-3625 | EFILED Document<br>CO Mesa County District Court 21st JD<br>Filing Date: Mar 25 2013 04:24PM MDT<br>Filing ID: 51305512<br>Review Clerk: Johneth Price |
| **Plaintiffs:** HENRY DRAKE AND JUDITH DRAKE<br><br>v.<br><br>**Defendants:** MESA COUNTY and its BOARD OF COUNTY COMMISSIONERS OF MESA COUNTY, CHRISTIE BARTON in her official capacity as a County employee, COLORADO RSA NO. 3 LIMITED PARTNERSHIP d/b/a VERIZON WIRELESS, and MONUMENT BAPTIST CHURCH, a Colorado nonprofit corporation. | COURT USE ONLY |
| Attorneys for Plaintiff:<br>Dan E. Wilson, #8533<br>DAN E. WILSON, ATTORNEY AT LAW, LLC<br>607 25 Road, Suite 201<br>Grand Junction, CO 81505<br>Phone: (970) 248-5800 - Fax: (970) 248-5805<br>E-mail: dan@danwilsonlaw.us<br><br>Matthew Sura, #44089<br>1275 East Ridge Ave., Boulder, CO 80303<br>Phone: (720) 563-1866<br>Email: mattsura.law@gmail.com | Case No.<br><br>Division: |
| **COMPLAINT AND REQUEST FOR DECLARATORY RELIEF** | |

COME NOW the Plaintiffs, Henry and Judith Drake, by and through co-counsel, Dan E. Wilson, Attorney at Law, LLC and co-counsel Matt Sura, Attorney at Law, who hereby respectfully submit the following claims pursuant to 42 US §1983, for declaratory relief pursuant to and for injunctive relief C.R.C.P. Rule 57 and the Colorado Declaratory Judgment Act, (C.R.S. §§ 13-51-101, *et seq*) and for damages proven at trial for the reduction in value to the Plaintiffs' home property.

## **PARTIES**

1. Plaintiffs are a married couple owning and residing on their home property located at 488 23 Road, Grand Junction 81507, in Mesa County, Colorado.
2. Defendant Mesa County, through the Board of County Commissioners, is a political

subdivision of the State of Colorado with the address of P. O. Box 20000, Grand Junction, CO 81502.

3. Defendant Christie Barton is employed by Mesa County as a Senior Planner in the Planning and Economic Development Department of Mesa County.

4. Colorado RSA No. 3 Limited Partnership, d/b/a Verizon Wireless ("Verizon") is an entity doing business in Mesa County with an address of 3131 S. Vaughn Way #550 Aurora, Colorado 80013.

5. Monument Baptist Church ("Church") is a Colorado non-profit corporation owning and operating a church at 486 23 Road, Grand Junction, 81507 in Mesa County, Colorado.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the parties and this action pursuant to C.R.S. § 13-1-124(1)(a) and (c) as they are owners of real property in Mesa County, Colorado and/or transact business in Colorado.

7. Venue is proper in the District Court for Mesa County, Colorado.

## GENERAL ALLEGATIONS

8. Henry and Judith Drake built their home on 488 23 Road in 2010 as their final retirement home intending to subdivide their large lot so that their son, Michael Drake, and his family could build on the eastern half of the lot and be available to care for them in the years to come.

9. The zoning for the Drake home and the surrounding area, including the abutting property owned by the Church, is residential single family, RSF-4.

10. Mr. Henry Drake learned about the proposed cell tower from a dirt contractor who was digging the foundation for the new cell tower and/or telecommunications facility ("TF") on the Church property.

11. Initially, Plaintiffs were concerned about the proposed construction of the Verizon TF because they thought it would be unattractive, would decrease the value of Plaintiffs' property, was not allowed in the RSF-4 zone per the Mesa County Land Use Code ("LUC"), was too close to their home in violation of the LUC and partially blocked their views to the south and southwest. On information and belief, the partial loss of view

causes a reduction in the value of the Plaintiffs' property as does the presence of a cell tower and/or a TF. It is not yet known if that loss of value can be determined with any precision, to be determined at trial.

12. News of this project caused the Drakes to research the health risks associated with living in close proximity to a TF. What Plaintiffs learned was that there is a reasonable potential for adverse health effects living so close to one. From the information available the Plaintiffs' conclusion is that this TF will not be safe beyond a reasonable doubt. Therefore, the Plaintiffs consider this project to be a life altering event. The plan they dreamed of and have been working toward for almost five years can no longer happen. The Plaintiffs have a heightened concern for health risks since Judith is a breast cancer survivor and Henry is currently managing a likely prostate cancer condition.

13. The Plaintiffs' son and daughter-in-law, Michael and Teresa Drake, having learned that Verizon is in the process of installing telecommunications facilities on the Church property next door, will not now build a home nor reside next to Plaintiffs, for fear of health risks to themselves and their children.

14. With the decision of Michael and Teresa Drake to refuse to live next to the TF, and thus not be as readily available to care for the Plaintiffs in their aging years, the Plaintiffs will be irreparably harmed if the cell tower/TF is allowed to be built and operated.

15. As soon as possible, Michael and Teresa Drake would reside next door if the TF is not located next door.

16. Mesa County Planning staff knew that Henry Drake, on behalf of both Plaintiffs, was concerned, but provided no notice of any pending applications, despite the LUC's requirements to do so.

17. Plaintiffs believed that the TF was not going forward because the Church's Pastor had told Henry Drake so.

18. In Mesa County's Project Review, Mesa County Planning staff described the project as construction of a "60-foot cell tower, appearing as a bell tower, at 486 23 Road at Monument Baptist Church."

19. In November 2012, Mesa County Senior Planner Christie Barton, for Mesa County, approved the construction for the cell tower and TF on the adjacent Church property.

20. Any TF or cell tower in a residential area is prohibited. See **Exhibit 1**, attached: LUC §

5.1.4 "Prohibited Uses", p. 5-1; and Table 5.1 p. 5-9.

21. Mesa County's site plan which approved a TF in a residential area is unlawful.

22. As the applicant, Verizon was required to notify the Plaintiffs and other abutting property owners by mail. Verizon did not do so.

23. The Land Use Code prohibits issuance of any permits to Verizon without proof that the neighbors were given written notice. **See Exhibit 1**, attached, §5.2.18 D.9.e.

24. Neither Plaintiffs nor the other abutting neighbors were given written notice of Verizon's application to build a TF or cell tower, in violation of law.

25. Verizon did not provide Mesa County or Christie Barton with proof of notice to the Plaintiffs and other abutting owners as required by the LUC. Therefore the site plan was illegal and should not have been approved.

26. Mesa County and Christie Barton were prohibited from approving a cell tower or TF within 200 feet of the Plaintiffs' property line. **See Exhibit 1**, attached, LUC § 5.2.18.D.4.b.

27. Verizon's site plan application, unlawfully approved by Christie Barton and Mesa County, located the TF less than seventy-five (75) feet from the Plaintiffs' property.

28. The LUC prohibits Mesa County and Christie Barton from approving a cell tower so close to the Plaintiffs' property.

29. Mesa County and Christie Barton unlawfully failed to require that Verizon attempt to locate the cell tower on an existing tower or other existing utility structure as is required by LUC § 5.2.18.D.4.d.(5); see attached **Exhibit 1**.

30. Mesa County and Christie Barton unlawfully failed to require that the Church's property, on which the cell tower is being built, must be landscaped per the LUC § 5.2.18.D.12.

31. Verizon, Mesa County and Christie Barton violated the "existing" structure provisions of LUC § 5.2.18.

### FIRST CLAIM FOR RELIEF
**Declaratory Judgment Pursuant to § 13-51-101 *et seq.* and C.R.C.P. 57**

32. Plaintiffs reallege the previous paragraphs and incorporate them by reference as if fully set forth herein.

33. Plaintiffs have the right to have the Court declare rights, status, and other legal relations,

whether or not further relief is or could be claimed.

34. Further relief based on a declaratory judgment or decree may be granted whenever necessary and proper. As a result of the unlawful actions of the Defendants, Plaintiffs have suffered a loss of value in their property at 488 23 Road. At present, it is not known if such reduction in value can be calculated or established with reasonable certainly or not. Nevertheless, Plaintiffs allege that they should be compensated for such loss in value, if it can be established at trial, or if not, that Defendants should be enjoined from construction and/or operating the TF and the cell tower.

35. Plaintiffs allege that Christie Barton's and Mesa County's approval of the site plan, building permit, cell tower and TF on the Church property is unlawful, should be enjoined, declared invalid, rescinded and ordered removed because the approval was in violation of zoning, notice, setback, and other provisions in the Land Use Code ("LUC).

## SECOND CLAIM FOR RELIEF
### Declaratory Judgment - Ultra Vires

36. Plaintiffs reallege the previous paragraphs and incorporate them by reference as if fully set forth herein.

37. The County has adopted rules of law in the LUC that only allow cell towers or TFs to be permitted in certain zones but not the RSF-4 zone, in any event at least 200 feet from adjacent residential property, and only after proper notice.

38. Plaintiffs allege that the TF can only be authorized pursuant to a conditional use permit ("CUP") process, as set forth in the LUC. As such, the TF must be removed and abated.

39. In the event that it is determined that Senior Planner Christie Barton took actions that were not authorized by official County policy, then Christie Barton is individually acting under color of law, without authority.

40. Because the Verizon TF was approved absent such authority, it was a void, *ultra vires* act.

41. As such, the Verizon TF was not lawfully approved and the Court should enter a decree to that effect, and direct that such illegal uses and structures be removed and abated.

## THIRD CLAIM FOR RELIEF

**Violation of Plaintiffs' Procedural Due Process Rights Under 42 U.S.C. § 1983**

42. Plaintiffs reallege the previous paragraphs and incorporate them by reference as if fully set forth herein.

43. The Plaintiffs (a) have a constitutionally protected property right; (b) governmental action has deprived them of that right; and (c) the deprivation occurred without due process of law. *See Hillside Cmty. Church v. Olson,* 58 P.3d 1021, 1025 (Colo. 2002).

44. The Plaintiffs have a constitutionally protected property right to not have a cell tower or TF in the residentially-zoned area where they live, or have a cell tower or TF placed closer than 200 feet from their property. The LUC required that Christie Barton and Mesa County deny the site plan application and not allow said construction of this TF by Verizon or the Church.

45. Mesa County, through its employee, Christie Barton, acting under color of state law, deprived the Plaintiffs of their constitutionally-protected property right when it failed to follow the zoning, notice, setback, and other provisions in the LUC and approved the TF, the cell tower site plan and building permit.

46. The deprivation of the Plaintiffs' property rights occurred without due process of law. The Plaintiffs were not afforded any notice or hearing as required by the LUC, the Fourteenth Amendment of the U.S. Constitution, and case law. *Mountain States Tel. & Tel. Co. v. Department of Labor and Employment,* 520 P.2d 586 (Colo. 1974).

## FOURTH CLAIM FOR RELIEF
### Injunction

47. Plaintiffs reallege the previous paragraphs and incorporate them by reference as if fully set forth herein.

48. Plaintiffs will be irreparably harmed if the cell tower and/or TF is allowed to be completed, and allowed to operate, as alleged above.

49. Plaintiffs are entitled to injunctive relief to stop the construction and/or operation of the cell tower and/or the TF.

## FIFTH CLAIM FOR RELIEF
### Award of Attorney's Fees and Costs Under 42 U.S.C. § 1988

50. Plaintiffs reallege the previous paragraphs and incorporate them by reference as if fully set forth herein.

51. Pursuant to 42 U.S.C. § 1988, prevailing plaintiffs in an action under 42 U.S.C. § 1983 are entitled to judgment against the Defendants for the amount of attorney's fees incurred by the Plaintiffs in pursuing the action.

52. Plaintiffs have incurred and will continue to incur attorneys fees in pursuit of their claims under 42 U.S.C. § 1983.

53. The County is liable to Plaintiffs for the attorney's fees incurred by Plaintiffs in pursuit of their claims under 42 U.S.C. § 1983, in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully pray request that:

A. The Court order that the approval of the site plan and building permit for the Verizon TF and cell tower on 486 23 Rd Grand Junction be rescinded, voided or otherwise held for naught;

B. The Court order that the approval of the site plan by Christie Barton was an *ultra vires* act and therefore invalid;

C. The Court find that Mesa County violated the Drakes' procedural due process rights;

D. The Court issue a preliminary and permanent injunction directing that construction of the TF and cell tower cease forthwith and that the present construction work be forthwith removed;

E. Plaintiffs be awarded damages, due to the reduction in value to their property as a result of the unlawful acts cited above and proven at trial;

F. The Court award Plaintiffs their attorney fees and costs pursuant to 42 U.S.C. § 1988 and as allowed by Colorado law; and

G. For such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand that all issues triable to a jury be so tried to a jury of six.

Dated: March 25, 2013

                                                Respectfully submitted,
                                                Dan E. Wilson, Attorney at Law, LLC

                                                Dan Wilson, Esq. (#8533)
                                                *Co-Counsel for Plaintiffs*

                                                Matthew Sura, Attorney at Law
                                                (#44089), *Co-Counsel for Plaintiffs*

# Chapter 5 *
# USE REGULATIONS

## 5.1 | Use Table

The Principal Uses Allowed within Rural, Urban Residential, and Nonresidential Zoning Districts are identified in Table 5.1 of this chapter (beginning on the following page).

Filing Date: Mar 25 2013 04:24PM MDT
Filing ID: 51305512
Reviewer: Clerk and Recorder

***Note***: All Principal Uses Allowed in the Rural Zoning Districts are the same (i.e., AF-35 and AF-T zone districts are treated the same in Table 5.1).

### 5.1.1 | Use Categories and Specific Uses
All of the use categories listed in the first column of Table 5.1 are defined in Sections 12.2-12.7 (Use Categories). The first column of each of the use tables contains an abbreviated definition of the respective use category. If there is a conflict between the abbreviated definition and the full explanation contained in Chapter 12 the provisions of Chapter 12 will control. In some cases, "Specific Use Types" are listed in the second column of the table. If a Specific Use Type is listed in the table, that use type is allowed only within the districts indicated, not within the districts that allow the broader Use Category.

### 5.1.2 | [A] Allowed Uses
An "A" indicates that the listed use is allowed by right within the respective zoning district. Allowed uses are subject to all other applicable standards of this Land Development Code.

### 5.1.3 | [C] Conditional Uses
A "C" indicates that the listed use is allowed within the respective zoning district only after review and approval of a Conditional Use Permit, in accordance with the review procedures of Section 3.8. Conditional Uses are subject to all other applicable standards of this Land Development Code.

### 5.1.4 | [ ] Prohibited Uses
A blank cell (one without an "A" or "C") indicates that the listed use type is not allowed within the respective zoning district, unless it is otherwise expressly allowed by other regulations of this Land Development Code.

### 5.1.5 | Uses Subject to Specific Regulations
Many uses are subject to use-specific regulations (in addition to general regulations that apply to development in general). The final column of the use table contains references to applicable use-specific standards.


EXHIBIT 1

CHAPTER 5 | USE REGULATIONS

No off-street parking shall be permitted within required street setbacks. Off-street parking areas shall be landscaped in accordance with Section 7.2.

B. Interior Side Setbacks
Principal buildings shall be subject to a minimum side setback of fifteen (15) feet or the interior side setback of the underlying zoning district, whichever is greater. Accessory structures located in the rear half of the parcel shall be set back at least five (5) feet from interior side lot lines.

C. Parking Area Screening
Off-street parking areas shall be landscaped in accordance with Section 7.2.

D. Visual Screening of Trash Containers
All trash containers shall be screened from view by a fence or wall with a minimum height of six (6) feet or the height of the container being screened, whichever is greater.

5.2.18 | Telecommunications Facilities

A. General
All telecommunications facilities shall comply with the standards of this Land Development Code, all applicable standards of the Federal Telecommunications Act of 1996, and all applicable requirements of the Federal Aviation Administration.

B. Disputes
If an applicant for a telecommunications facility claims that one (1) or more standards of this Land Development Code are inconsistent with the Federal Telecommunications Act of 1996, or would prohibit the effective provision of wireless communications within the relevant market area, the Decision-Making Body may require that the application be reviewed by a qualified engineer for a determination of whether compliance with one (1) or more standards of this Land Development Code would prohibit effective service. Any costs shall be charged to the applicant.

C. Rural Planning Area

1. Attached Telecommunications Facilities
Attached telecommunications facilities shall be allowed by right in the districts referenced in the Use Table, as "C" provided that they comply with all applicable standards of the underlying zoning district, including any maximum height standards. If visible from Urban Residential or Rural Zoning Districts, attached telecommunications facilities shall be screened or painted to minimize their visibility from such areas.

2. Telecommunications Facility Support Structures
Telecommunications facility support structures shall not be subject to the maximum height standards of the underlying zoning district, but shall be subject to any height restriction imposed at the time of approval of the applicable Conditional Use Permit. In no case shall the maximum height of a telecommunications facility support structure exceed the height necessary to ensure effective telecommunications service within the relevant market area. All telecommunications facility support structures shall be screened or painted to minimize their visibility.

D. Urban Planning Areas

1. Purpose
The purpose of this section is to regulate the placement, construction and modification of towers and/or telecommunications facilities in order to protect the health, safety and welfare of the public, while at the same time not unreasonably interfering with the development of competitive wireless telecommunications.

2. Application
No telecommunications facilities and towers shall be altered, added to, installed or permitted without an approved Site Plan or Conditional Use Permit for the property and the facility or tower.

CHAPTER 5 | USE REGULATIONS

3. Exemptions
   This section does not apply to amateur radio equipment, as licensed by the FCC that is less than ten (10) feet tall measured from grade, or ten (10) feet higher than the highest point of the roof.

4. Telecommunications Facilities (TF) and Tower (T) Review.
   No application shall be approved until the applicant establishes, to the satisfaction of the decision maker, that the following are satisfied:

   a. Towers and telecommunications facilities shall be located to minimize any visual and other adverse impact to the neighborhood, especially residential areas and land uses. If the proposed location is on leased property, proof of possession is required.

   b. Telecommunications facilities and towers shall be set back from all residentially zoned or used property by a minimum of two hundred (200) feet, or two hundred percent (200%) of the height of the proposed tower or facility, whichever is greater. Setback requirements shall be measured from the outside perimeter of the base of the tower, and every other vertical component of the TF or T higher than ten (10) feet, to any portion of the other property. If notice to the affected property owner is given, the decision maker may reduce any such setback by up to twenty-five percent (25%) if such reduction will allow a tower to be located so that the visual impact on the neighborhood is reduced. For example, a setback could be reduced to allow a tower to be located next to trees in order to partially shield the tower from view.

   c. All Telecommunication facilities and towers shall be set back a minimum of eighty-five (85) feet from the property line or at a 2:1 ratio (two (2) foot of setback for every foot of tower height from the property boundary of the facility) whichever is greater, from non-residentially zoned or used property.

   d. All Telecommunications facilities and towers on public utility structures, facilities or property shall be exempt from the 2:1 setback requirement if they are no taller than the existing utility structure in said location and if approved by the Decision Maker.

      (1) Monopole tower structures shall be separated from all other towers, whether monopole, self-supporting lattice or guyed, by a minimum of seven hundred and fifty (750) feet.

      (2) Self-supporting lattice or guyed towers shall be separated from all other self-supporting lattice or guyed towers by a minimum of one thousand five hundred (1,500) feet.

      (3) Shared use/co-location of wireless communication facilities on existing structures, towers or buildings in a manner that precludes the need for the construction of a freestanding structure of its own is encouraged. To that end, an application for an integral, concealed tower or telecommunication facility may be issued by the Decision Maker.

      (4) Towers or facilities that can be constructed as an integral part or component of light standards, buildings, utility structure or other structures at County owned buildings or facilities are encouraged.

      (5) No new tower or facility shall be permitted unless the applicant demonstrates to the satisfaction of the Decision Maker that no existing tower, structure or utility facility can be used in lieu of new construction for the applicant's use. At a minimum, such applicant shall demonstrate that:

         (a) No existing tower, facility or utility structure is located within a distance which meets the applicant's engineering requirements;

      (b)    No existing tower, facility or utility structure is located within a distance which meets the applicant's engineering requirements and which has sufficient structural strength or space available to support the applicant's telecommunication facility and related equipment;

      (c)    The applicant's proposed telecommunication facility will not cause unreasonable electromagnetic or other interference with the antennas on existing towers, structures or utility structures or the antennas of existing Towers, Facilities or utility structures or that such existing facilities would interfere with the applicant's uses such that co-location is not possible;

      (d)    There is some other reasonable factor that renders existing towers, facilities or utility structures unsuitable; and

      (e)    No owner of existing towers, structures or utility structures, including the County and other governments, within a distance which meets the applicant's engineering requirements, will allow the applicant to place its telecommunication facility thereon or such owner is requiring unreasonable payment or terms.

      (f)    The applicant shall submit evidence concerning structural and engineering standards prepared by a Colorado registered professional engineer. The safety of the property and the neighborhood shall be protected.

5. Interference
Every tower and telecommunication facility shall meet the regulations of the Federal Communications Commission (FCC) regarding physical and electromagnetic interference.

6. Health Issues
Every tower and telecommunication facility shall meet applicable health and safety standards for electromagnetic field (EMF) emissions as established by the FCC and/or any other federal or state agency having jurisdiction.

7. View Corridors
Only a concealed tower or telecommunications facility, the antennas of which all are located on existing vertical structures, is allowed within one-eighth (1/8) mile from the right-of-way of any portion of Monument Road, and other rights-of-way which may be designated by resolution of the Board of County Commissioners.

8. Historic Zones
Only a concealed tower or telecommunication facility is allowed within a historic zone or area as designated by the Board of County Commissioners by resolution.

9. Application Requirements
In addition to other requirements of this Code, each applicant for a Tower or Telecommunication Facility shall provide the Planning Director with an inventory of all of the applicant's existing Tower(s) and/or Telecommunication Facility(ies) or approved sites for the facilities.

      a.    A zone map specific to the application from the County's zoning map drawn to scale, showing land uses and zoning designation of all uses within a quarter (¼) of a mile.

      b.    A computer-generated visual analysis from all adjacent rights-of-way, showing the relationship of the tower/facility to the topography and other spatial relationships deemed necessary or required by the decision maker to assess compliance with the Code. If there are more than four (4) such rights-of-way, the Decision Maker shall designate which rights-of-way shall be analyzed.

CO Mesa County District Court 21st JD
Filing Date: Mar 25 2013 04:24PM MDT
Filing ID: 51305512
Review Clerk: Johneth Price

    c.   A description of the tower/facility's capacity which declares the number and type(s) of antennae(s) that it can accommodate or an explanation why their facility cannot be designated to accommodate other users.

    d.   An agreement retained by the County which commits the facility owner and its successors to allow shared use of the facility if an additional user(s) agrees in writing to the reasonable terms and conditions of shared use. The applicant shall annually report to the Planning Director the names, addresses and telephone numbers of every inquiry for co-location; and the status of any such inquiry.

    e.   The applicant shall provide evidence of mailed notice of a proposed tower or telecommunication facility to all abutting property owners within four (4) times the distance that the tower or facility is tall, or five hundred (500) feet, whichever is greater, and to any neighborhood association that would be entitled to notice under this Code.

    f.   Any other information as required by the Decision Maker to evaluate the request, especially technical information.

10. **Public and Utility Structures**
A tower or telecommunication facility mounted on existing structures of public utilities which have a franchise or other written permission from the County use concealed towers/telecommunication facilities are permitted in all non-residential zoning districts, unless otherwise specified by this Code. The Decision Maker may approve the placement, extension or replacement of a Tower or Telecommunication Facility on an existing public utility structure up to fifty (50) feet above the highest point on the same; the Decision Maker may waive public notice and may waive any other submission requirement if he deems that the public interest will not be harmed.

11. **Design, Materials and Color**
towers and telecommunication facilities shall be designed and maintained: to minimize visual impact; carry gravity loads, and wind loads with safety measures as required by applicable regulations including adopted building codes; use concealment or stealth methods, such as camouflaging towers to look like light poles or trees, if at all possible; if co-located, to match the color, shape and look of the structure or facility to which they are attached; to use only non-specular materials.

In order to be considered a concealed tower or telecommunication facility, the tower or telecommunication facility shall:

    a.   be architecturally integrated with existing buildings, structures and landscaping, including height, color, style, massing, placement, design and shape;

    b.   be located to avoid a silhouette and preserve view corridors to the east and the west of the Grand Mesa and the Colorado National Monument, as determined from viewing the tower or facility from anywhere within the original square mile of the City of Grand Junction;

    c.   be located on existing vertical infrastructure such as utility poles and public buildings or utility structures;

    d.   roof-mounted antennas shall be located as far away as feasible from the edge of the building. Antennas attached to the building should be painted or otherwise treated to match the exterior of the building;

    e.   equipment shelters and antennas shall not extend more than ten (10) feet from the top of the building. Any deviation from this standard shall be reviewed and approved, disapproved or approved with conditions;

    f.   be located in areas where the existing topography, vegetation, buildings or other structures provide screening; and

5-23
**Land Development Code** (Effective May 2000) Last Revised December 2012
* denotes change to Code – see Appendix A

page 5-7

    g.    the applicant/developer shall be required to structurally design the footing of the tower or antenna to support a tower or antenna which is at least fifteen (15) feet higher than that proposed by the applicant to accommodate co-locations.

12. Landscaping and Screening
    The property on which a telecommunication facility or tower is located shall be landscaped and screened as follows:

    a. A free-standing Tower or Telecommunication Facility shall include landscaping planted and maintained according to an approved landscaping plan and is subject to the screening requirements of Section 7.2 and the Flexible Point System, Chart E: Buffers.

13. Lighting and Signage

    a. Only lighting required by a federal agency is allowed. The location of the lighting fixture(s) shall be such that the lights do not shine directly on any public right-of-way and that the light emitted is otherwise in compliance with this Code.

    b. Only signage that is required by state or federal law is allowed. No advertising shall be permitted.

14. Exterior Tower or Telecommunication Facility Equipment Building(s) or Cabinet(s)
    Exterior tower or telecommunication facility equipment building(s) or cabinet(s) shall not contain more than four hundred (400) square feet of gross floor area, shall not be more than twelve (12) feet in height, and shall maintain the minimum setback, landscaping and screening requirements of the zone in which it is located.

15. Modification or Demolition
    Any Tower or Telecommunications Facilities being modified, demolished or rebuilt shall be brought into compliance with the standards adopted in this Code.

16. Maintenance
    Every owner of a Tower or Telecommunications Facility shall take special care to operate, repair and maintain all such facilities so as to prevent failures and accidents which cause damage, injuries or nuisances to the neighborhood and public. All wires, cables, fixtures and other equipment shall be installed in compliance with the requirements of the National Electric Safety Code and all FCC, FAA, state and local regulations, and in such a manner that will not interfere with radio communications, electronic transmissions or all other electromagnetic communications or otherwise cause a safety hazard.

17. Review
    Each new tower or facility will be subject to a two (2)-year review by the Planning Director. The review will determine whether or not the originally approved number of antenna and design are still appropriate and necessary to provide adequate communications services.

18. Abandonment
    The wireless telecommunication facility owner shall remove all wireless telecommunications facilities that are not in use for any six (6)-month period, within three (3) months of the end of such six (6)-month abandonment. As a part of such removal, the owner shall revegetate the site so that it is compatible with the neighborhood. Abandonment shall only be determined by the Board of County Commissioners after the owner has had notice and an opportunity to be heard.

19. FAA

    a. No person shall construct or alter a telecommunications tower or facility without a permit therefore and without having first obtained the approval of the Decision Maker. To

obtain such review, the applicant shall submit FAA Form 7460-1, Notice of Proposed Construction or Alteration;

b. Form 7460-1 shall not be required for the following:

(1) an amateur radio antenna if owned and operated by a federally licensed amateur radio operator or used exclusively for a receive-only antenna;

(2) any existing tower and antenna provided a building permit was issued for a tower or antenna prior to the adoption of this Code;

(3) any emergency telecommunications facilities used exclusively for emergency services including, but not limited to, police, fire and operation of governmental entities; or

(4) any antennae used for FCC licensees engaged in AM, FM or television broadcasting.

5.2.19 | Vehicle and Equipment Sales
Vehicle and equipment sales uses (including automobiles, recreational vehicles, trucks, boats, and motorcycles) within Nonresidential Zoning Districts (not applicable to Rural Zoning Districts) shall be subject to the following standards.

A. The vehicles shall be located behind a landscaped area meeting the buffer requirements of parking lots in Section 7.2

B. Landscaping shall provide a buffer between the right-of-way and the vehicle storage area.

C. No vehicle shall be displayed or stored within a required landscape.

D. Not more than one (1) vehicle display pad, which may be elevated up to three (3) feet in height, shall be permitted per one hundred (100) feet of street frontage.

E. No other materials for sale shall be displayed between the principal structure and the street.

5.2.20 | Waste-Related Use (Used or Waste Tires)

A. Used or waste tires may only be legally disposed of in a County-designated landfill or solid waste disposal facility authorized to accept used or waste tires for storage or disposal, provided, however, that no more than fifty (50) used or waste tires may be kept on property in any Rural Zone District (unless accessory to an ensilage pit), and no more than ten (10) used or waste tires may be kept on property in any RSF-R, RSF-E, RSF-1, RSF-2, RSF-4, RMF-5, RMF-8, RMF-16, or RMF-24 Zoning District.

B. Used or waste tires shall not be used to construct fences or any other structures unless a building permit has been issued by the Mesa County Building Department for such construction and said construction is in compliance with the Uniform Building Code as adopted by Mesa County.

5.2.21 | Self Service Storage/Mini-Warehouse
Self service storage, or mini-warehouse, uses within the Rural Zoning Districts are not allowed except as a Conditional Use and only within the six (6) Rural Communities of Loma, Mack, Whitewater, Mesa, Powderhorn, and Gateway; and must comply with the Development Standards of Chapter 7.

5.2.22 | Oil and Gas Support Services
Land uses that provide support service for oil and gas drilling operations, including parking, storage and maintenance of exploration, production or workover equipment, pipe and production equipment, equipment and storage yards for road and pipeline construction contractors and production unit set-up and maintenance contractors; and non-permanent field offices used by production related personnel shall be subject to Conditional Use Permit review. If the use is requested for a period of less than one (1) year, a Temporary

CHAPTER 5 | USE REGULATIONS

### Table 5.1

Principal Uses Allowed (Size Limits Apply to Buildings in Nonresidential Districts. See Building Size Limits of Section 6.1)

| Use Category | Specific Use Type | Rural AFT/AF35 | Urban Residential RSFR | URR | RSF1 | RSF2 | RSF4 | RSF5 | RSF8 | RMF12 | RMF16 | RMF24 | Nonresidential R0 | B1 | B2 | C1 | C2 | I1 | I2 | Mack Overlay District TIER #1 | TIER #2 | Old Town Clifton Mixed Use District MU-OTC | Mixed Use MUR | Mixed Use MUC | GATEWAY OVERLAY District Area A | Area B | Use-Specific Standards Code Sections |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Residential (see Section 12.3)** | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Household Living | Business Residence | | | | | | | | | | | | A | A | A | A | A | A | C | A | A | | | | A | C | 5.2.4 |
| | Rooming/Boarding House | | | | | | | | A | A | A | | A | A | C | C | | A | A | A | A | C | C | C | A | C | |
| | Single-Family Attached | | | | | A | A | A | A | | | | A | C | | | | | | A | A | A | A | A | A | C | |
| | Single-Family Detached (includes manufactured homes) | A | A | A | A | A | A | A | A | | | | A | | | | | | | A | A | | A | A | A | A | |
| | Duplex | | | A | A | A | A | A | A | A | | | A | C | | | | | | A | A | A | A | A | A | C | |
| | Multi-Family | | | | | | A | A | A | A | A | A | A | A | C | C | C | | | A | A | A | A | A | A | C | 5.2.15 |
| | Agricultural Labor Housing | A | A | C | | | | | | | | | | | | | | | | | A | | | | A | A | 5.2.2 |
| | Town Home | | | | | | A | A | A | A | A | A | C | C | | | | | | A | A | A | A | A | A | C | |
| | Manufactured Housing Park | | | | | | C | C | C | A | A | A | C | C | C | | | | | | A | | | | A | A | 5.2.14 |
| | All Other Household Living | | | | | | A | A | A | A | A | A | C | | | | | | | A | A | C | C | C | A | C | |
| | Temporary Employee Housing | C | | | | | | | | | | | | | | | | | | | | | | | | | 5.2.23 |
| Group Living | Assisted Living Facility | C | C | C | C | C | C | C | C | C | C | C | C | C | C | C | C | C | C | C | C | C | C | C | C | C | 5.2.10 |
| | Treatment Facility | C | C | C | C | C | C | C | C | C | C | C | C | C | C | A | A | C | C | C | A | | | C | C | C | 5.2.10 |
| | Small Group Living Facility | C | C | C | C | C | C | C | C | C | C | C | C | C | C | C | C | C | C | C | A | C | C | C | C | C | 5.2.10 |
| | Large Group Living Facility | | | | | | | C | C | C | C | C | C | C | C | C | C | C | C | C | A | C | C | A | C | C | 5.2.10 |
| **Institutional & Civic (see Section 12.4)** | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Colleges and Vocational Schools | Colleges and Universities | | C | | | | | C | C | C | C | C | C | C | C | A | A | A | C | C | A | | | | C | C | |
| | Vocational/Technical/Trade Schools | | | | | | | | | | | | | A | A | A | A | A | A | A | A | A | | A | C | C | |
| | All Other Educational Institutions | | | | | | | | | | | | | C | C | C | C | C | C | A | A | C | | | C | C | |
| Community Service | Community Activity Building | C | A | A | A | A | A | A | A | A | A | A | A | A | A | A | A | | | A | A | A | A | A | A | C | |
| | All Other Community Service | C | C | C | C | C | C | C | C | C | C | C | C | C | A | A | C | C | C | A | A | C | C | C | C | C | |
| Cultural | Museums, Art Galleries, Opera House, Libraries | C | C | | | | | | | | | | A | A | A | A | C | C | C | A | A | A | A | A | A | C | |
| Day Care | Home-Based Day Care | A | A | A | A | A | A | A | A | A | A | A | C | C | | | | | | A | A | C | C | A | A | C | |
| | Limited Day Care | C | C | A | A | A | A | A | A | A | A | A | C | C | C | C | | | | A | A | C | C | C | A | C | |
| | General Day Care | C | C | C | C | C | C | C | A | A | A | A | C | C | C | C | C | | | C | C | A | C | C | A | C | |

E-FILED Document
CO Mesa County District Court 21st JD
Filing Date: Mar 25 2013 04:24PM MDT
Filing ID: 51305512
Review Clerk: Johneth Price